UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TARMIKO CARTER,

                                    Plaintiff,

            -vs-                                                      06-CV-186C(F)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

---

Plaintiff Tarmiko Carter initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

## **BACKGROUND**

Plaintiff filed her applications on July 13, 2004, alleging disability due to myofacial pain syndrome, learning disability, and affective disorder, with an onset date of February 28, 2003 (Tr. 27, 320, 335, 360).[1] These applications were denied upon initial agency review (Tr. 355-59). Plaintiff requested a hearing, which was held on November 3, 2005, before Administrative Law Judge ("ALJ") Alan Sacks (Tr. 55-98). Plaintiff appeared and testified at the hearing, and was represented by Kathleen A. Traina, a paralegal at Erie

---

[1] "Tr." refers to pages of the administrative transcript filed by the Commissioner as part of her answer (Item 8).

County Department of Social Services.  James A. Phillips, a vocational expert, also testified.

In a decision dated December 6, 2005, ALJ Sacks found that plaintiff was not disabled within the meaning of the Social Security Act (Tr. 13-26). Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI)), the ALJ reviewed the medical evidence and determined that plaintiff's impairments (including degenerative disease of the lumbar spine, affective disorder, and cognitive disorder), while severe, did not meet or equal the criteria of any impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically addressing Listings 1.04 (Disorders of the spine), 12.02 (Organic Mental Disorders), and 12.04 (Affective Disorders) (Tr. 16-21).  The ALJ then found that, from the alleged onset date until January 13, 2005, plaintiff had the residual functional capacity for medium work involving only simple, routine tasks and low stress, and after that date, for light work with the same restrictions (Tr. 24). Considering her age (33 at the time of the hearing), education (9th grade), and work experience (security guard, child care attendant, packer and stock clerk) along with the testimony of the vocational expert, the ALJ concluded that plaintiff could perform her past work as a packer until January 13, 2005, and could perform a significant number of jobs in the national and local economy at all relevant times since her alleged onset date (Tr. 25).  The ALJ's decision became the Commissioner's final determination on January 25, 2006, when the Appeals Council denied plaintiff's request for review (Tr. 3-5).

Plaintiff then filed this action on March 27, 2006, pursuant to the judicial review provision of 42 U.S.C. § 405(g).  In support of her motion for judgment on the pleadings,

plaintiff contends that the ALJ erred by failing to consider whether plaintiff's borderline intellectual functioning meets or equals Listing 12.05C, describing the requirements for a finding of mental retardation. Plaintiff also contends that the Commissioner failed to discharge his duty to develop the record in order to obtain the opinion of a medical expert in this regard. The Commissioner responds that plaintiff did not meet her burden at step three of the sequential evaluation process to establish that her impairment met or equaled the requirements of Listing 12.05C, and that the Commissioner fully discharged his duty to develop the record.

For the reasons that follow, the court finds that Commissioner 's denial of plaintiff's DIB and SSI applications must be affirmed.

## DISCUSSION

**I.     Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to

accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Smith v. Massanari*, 2002 WL 34242375, at *4 (W.D.N.Y. March 17, 2002) (citing *Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999)).

II.   **Standard for Determining Eligibility for DIB and SSI**

To be eligible for disability insurance benefits or supplemental security income benefits under the Social Security Act, plaintiff must show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  The regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.

§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, defined as an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is found to be severe, the ALJ then determines at the third step whether the impairment meets or equals the criteria of an impairment found in the Listings. If it meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing her past relevant work. If the claimant is not capable of performing past relevant work, the fifth and final step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).[2]

---

[2] The Commissioner ordinarily meets his burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"). The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education, and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996). However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert

In this case, ALJ Sacks first determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr. 14). At step two, the ALJ found that the objective medical evidence in the record established "severe cognitive, affective and lumbar disorders" (Tr. 16). Proceeding to step three, the ALJ discussed this evidence, along with plaintiff's hearing testimony, against the background of the criteria for Listings 12.02 (governing cognitive impairments), 12.04 (governing affective disorders, such as depression), and 1.04 (governing spinal impairments, such as degenerative disk disease), concluding that plaintiff's impairments did not meet the criteria of any of these listings (*see* Tr. 16-21). The ALJ further stated that, "in the absence of expert testimony on this issue, I may not conclude that the claimant has an impairment or combination of impairments that would equal the criteria of any listing section in severity" (Tr. 21).

At step four, ALJ Sacks determined that despite having severe impairments, plaintiff retained the capacity to perform a range of medium work[3] until January 13, 2005, when she experienced reduced lumbar range of motion (*see* Tr. 20, 23). According to the ALJ, this limited plaintiff to a range of light work after that date (Tr. 23). Based upon this determination, and considering plaintiff's hearing testimony (which he found to be "generally credible" (Tr. 21)), along with her age, education, and the testimony of the

---

(or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

[3]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she can also do light work and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c); *see also* Social Security Ruling ("SSR") SSR 83-10. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10.

vocational expert, the ALJ found at step five that plaintiff was capable of engaging in her past relevant work as a packer until January 2005, and could perform other jobs that existed in significant numbers at all relevant times since her alleged onset date (Tr. 24-26).

### III.     Listing 12.05C

Plaintiff's primary contention is that the ALJ erred by not considering whether plaintiff's cognitive impairments were sufficiently severe to meet or equal the criteria for determining mental retardation found in Listing 12.05C, which provides:

> 12.05   *Mental retardation:*  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05.  As explained in the Social Security Administration Program Operations Manual System ("POMS"):

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment.  The criteria for this paragraph are such that a medical equivalence determination would very rarely be required.  However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination.  It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § 24515.056(D)(1)(c), available at www.socialsecurity.gov.

As an initial matter, there is no indication in the record that plaintiff sought a determination of disability on the basis of mental retardation prior to the ALJ's hearing decision. Her DIB and SSI applications referred alternatively to "affective disorder" or "depression" (*see* Tr. 320, 335, 360), and it was not until after the ALJ made his ruling with respect to Listings 12.02 and 12.04, and her representative submitted a memorandum in support of her request for review by the Appeals Council, that any reference to Listing 12.05C was made (*see* Tr. 9). In denying review, the Appeals Council noted the arguments raised in the representative's memorandum, but "found that this information does not provide a basis for changing the [ALJ]'s decision" (Tr. 3-4).

More importantly, the court agrees with the argument put forward by the Commissioner that there is insufficient evidence in the record to provide a basis for plaintiff to establish that she suffers from a mental impairment which meets or equals the criteria of Listing 12.05C. For example, there are no objective medical or school records to support a finding of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22," as the Listing's introductory paragraph requires. Rather, the record reflects only that plaintiff underwent intelligence testing in March 2004, when she was thirty-three years old (Tr. 132-34). The results of the Wechsler Adult Intelligence Scale-Revised test administered at that time ranged between 72 and 76, well above the range of 60-70 required by Listing 12.05C.

While it is true, as plaintiff points out, that the POMS allow for a finding of medical equivalence where the claimant shows a slightly higher IQ than the Listing range, the POMS also recommend that this finding be reserved for claimants who can demonstrate "the presence of other physical or mental disorders that impose additional and significant

work-related limitation of function . . . ." POMS § 24515.056(D)(1)(c). Here, the ALJ thoroughly considered the objective evidence and testimony, and provided a well-reasoned explanation of his reasons for finding no significant physical or mental work-related limitations of function (*see* Tr. 21-23). When considered in this light, a reasonable mind could easily conclude that plaintiff cannot establish a mental impairment of the severity required by Listing 12.05C.

In addition, the court's review of the record reveals substantial evidence to support this conclusion. For example, in a "Psychiatric Review Technique" report dated November 4, 2004, state agency medical consultant Dr. George Benett specifically found that there was insufficient evidence in the record to substantiate the presence of the requisite criteria of Listing 12.05 (Tr. 173). As explained at length in the Social Security regulations and rulings, the opinion of non-examining medical or psychological consultant may be accorded significant weight by the adjudicator "insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence . . . , the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the . . . consultant . . . ." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) (listing factors to consider in deciding weight to give any medical opinion); 20 C.F.R. §§ 404.1527(f)(ii), 416.927(f)(ii) (same factors apply to opinions of state agency consultants).

Based on this analysis, the court finds that the ALJ did not commit error at the third step of the sequential evaluation when he assessed whether plaintiff's impairments met or equaled the criteria of Listings 12.02 and 12.04, but not 12.05C.

## IV. Duty to Develop the Record

Plaintiff also contends that the ALJ committed error by failing to obtain the opinion of a medical expert as to whether plaintiff's mental impairments meet or equal the criteria of Listing 12.05C. In this regard, it is well settled that the ALJ has an affirmative duty to develop the medical record and seek out further information where the evidence is inconsistent or contradictory, or where evidentiary gaps exist. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, where there are no obvious gaps, and the record presents "a complete medical history," the ALJ is under no duty to seek additional information before rejecting a claim. *Id.* at 79, n. 5 (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

In addition, the applicable regulation provides that the ALJ "may . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) and on whether [her] impairment(s) equals the requirements of any impairment" in the Listings. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(iii). As the court's plain reading of this regulation suggests, and as the cases have confirmed, this language is "permissive, not mandatory." *Greiman v. Astrue*, 2007 WL 3231531, at *6 (W.D.Va. October 30, 2007).

The court's review of the ALJ's decision in this case in light of the record as a whole leads to the inescapable conclusion that the ALJ did not abuse his discretion by failing to consult an expert to determine medical equivalence under Listing 12.05C. As discussed above, the ALJ thoroughly addressed the well-developed medical evidence, including several reports and opinions of plaintiff's treating physicians, in assessing equivalence with

Listing criteria at step three of the sequential evaluation. No obvious evidentiary gaps have been identified, and plaintiff has otherwise failed to identify any information to suggest that additional expert testimony might have required the ALJ to reach a different conclusion.

Accordingly, the court finds under the circumstances of this case that the ALJ did not fail to discharge his discretionary duty to ask for and consider the opinion of a medical expert with respect to the issue of medical equivalence.

## **CONCLUSION**

Based on the foregoing, the court concludes that the ALJ employed the correct legal standards, and that there is substantial evidence to support the Commissioner's final determination that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the Commissioner's determination is affirmed, and his motion for judgment on the pleadings (Item 9) is granted. Plaintiff's motion for judgment on the pleadings (Item 12) is denied, and this action is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner. So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: May 2  , 2008
p:\opinions\06-186.april2508